**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NORDYNE, INC., | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09-cv-00203-ERW |
| | ) | |
| RBC MANUFACTURING CORP., | ) | |
| | ) | |
| Defendant and Counterclaim-Plaintiff. | ) | |
| | ) | |

**RBC MANUFACTURING CORP'S OPPOSITION**
**TO NORDYNE'S MOTION FOR LEAVE TO FILE ITS PROPOSED**
**SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

**TABLE OF CONTENTS**

I.    **INTRODUCTION** ...................................................................................................1

II.   **BACKGROUND**..................................................................................................3

III.  **THE COURT SHOULD DENY NORDYNE'S MOTION FOR LEAVE.**........................3

      A.     Nordyne Fails to Meet the Pleading Standard Set forth In *Exergen* and, Thus, Amendment Would Be Futile. ......................................................................................4

             1.      Applicable Law. ..................................................................................4

             2.      In Count III, Nordyne Fails to Identify the "Why" Element. ..........................5

             3.      In Count IV, Nordyne Fails to Identity the "Who," "Why," "How," and "What" Elements ......................................................................................6

                    a)     Nordyne's allegations of a prior art "disclosure."...............................6

                    b)     Nordyne allegations of an "offer for sale or sale." ..............................8

                    c)     Nordyne's allegations about the "Next Generation Indoor Blower ICM" Itself. .......................................................................................9

      B.     Nordyne's Claim Based on the '896 Patent Is Untimely...........................................9

IV.  **CONCLUSION** ..................................................................................................12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bell v. Allstate Life Insurance Co.,*
    160 F.3d 452 (8th Cir. 1998) ..................................................................... 3, 10, 11

*Constant v. Advanced Micro-Devices, Inc.,*
    848 F.2d 1560 (Fed. Cir. 1990)......................................................................... 7

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
    575 F.3d 1312 (Fed. Cir. 2009)................................................................... 4, 5, 9

*King Automotive, Inc. v. Speedy Muffler King, Inc.,*
    667 F.2d 1008 (C.C.P.A. 1981) ......................................................................... 4

*Northern Telecom, Inc. v. Datapoint Corp.,*
    908 F.2d 931 (Fed. Cir. 1990)........................................................................... 7

*United States v. Fairview Health Systems,*
    413 F.3d 748 (8th Cir. 2005) ............................................................................. 3

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ............................................................................................. 4, 9

Fed. R. Civ. P. 15(a) .............................................................................................. 3

Defendant and counterclaim-plaintiff RBC Manufacturing Corp. ("RBC") respectfully submits this Opposition to Nordyne, Inc.'s ("Nordyne") Motion for Leave to File its Second Amended Complaint for Declaratory Judgment.

## I.      INTRODUCTION

Nordyne asks this Court for leave to file its proposed Second Amended Complaint (the "proposed SAC").  Nordyne's proposed SAC includes two new claims, Counts III and IV, both of which seek declaratory judgment that RBC's U.S. Patent No. 5,592,058 (the "'058 Patent") is unenforceable due to inequitable conduct.  Nordyne's motion for leave should be denied for at least two independent reasons.

First, Nordyne's motion should be denied because the proposed SAC does not meet the heightened standards for pleading inequitable conduct, and thus amendment would be futile.  To discourage indiscriminate accusations of fraud, the Federal Circuit has long required that inequitable conduct claims be pled with particularity.  Nordyne's proposed SAC fails to meet this standard.  In Count IV, for example, Nordyne alleges that a letter that RBC's predecessor corporation, General Electric (and specifically, named inventor Rajendra K. Shah) sent to Trane (the "Trane Letter") is a prior-art "disclosure" that was deliberately withheld from the U.S. Patent and Trademark Office ("PTO").  But Nordyne fails to allege any facts sufficient to support a reasonable inference that the Trane Letter—a private communication between General Electric and Trane—was *publicly available*, a necessary predicate for it to qualify as a prior art disclosure.  Because of Nordyne's complete failure to identify the facts necessary to plead that the Trane Letter was prior art, which itself is fatal under Fed. R. Civ. P. 9(b), Nordyne's allegations do not support a reasonable inference of *scienter*—that an identified person involved in the prosecution knew of the Trane Letter and deliberately withheld it with an intent to deceive

the PTO.  Nordyne fails to plead its other inequitable conduct claims with particularity as well.

Because the SAC fails to meet the applicable pleading standard, amendment would be futile.

Second, Nordyne's motion for leave should be denied because it is untimely.  Nordyne

claims in its motion that it has "newly discovered facts" that support its assertion in Count III

that U.S. Patent No. 4,978,896 (the "'896 Patent") invalidates the '058 Patent and was

improperly withheld.  But Nordyne fails to identify any such "newly discovered facts."  Nordyne

has been fully aware of the '896 Patent for a minimum of five months; Nordyne itself identified

the '896 Patent in its own Rule 26 initial disclosures in October 2010.  Now, with fact discovery

set to close shortly (on May 4, 2011), Nordyne seeks to assert an inequitable conduct claim based

on the '896 Patent, but Nordyne has provided no justification as to why, if Nordyne believes the

claim has merit (which RBC denies), it waited more than five months—until the end of fact

discovery—to seek to assert the claim.  This delay has prevented RBC from serving discovery

upon Nordyne in order to discover the basis for its claim.  In view of Nordyne's undue and

unexplained delay and the resulting prejudice to RBC, Nordyne's motion for leave should be

denied.

For these reasons and others discussed below, Nordyne's motion for leave to amend

should be denied.

## II.     BACKGROUND

Nordyne filed its original complaint in this action in February 2009—more than two

years ago.  By its complaint, Nordyne sought a declaratory judgment that RBC's '058 Patent is

invalid and/or not infringed by Nordyne.  In July 2009, Nordyne filed an amended complaint.[1]

In October 6, 2010, Nordyne served amended initial disclosures under Rule 26(a),

identifying the '896 Patent as material prior art to the '058 Patent.  (*See* Ex. 1 at 10.)

On April 6, 2011, Nordyne filed the instant motion for leave to file its proposed SAC.

The proposed SAC includes two new claims, Counts III and Count IV, which seek declaratory

judgment that the '058 Patent is unenforceable due to inequitable conduct.  In Count III,

Nordyne alleges inequitable conduct based on the '896 Patent.  In Count IV, Nordyne alleges

inequitable conduct based on an alleged prior art "disclosure" and "offer for sale or sale" of an

invention claimed in the '058 Patent.

## III.    THE COURT SHOULD DENY NORDYNE'S MOTION FOR LEAVE.

Rule 15 of the Federal Rules of Civil Procedure allows a party whose time to amend

without leave has expired to amend its pleading with the court's leave.  *See* Fed. R. Civ. P.

15(a)(2).  Although Rule 15 states that leave to amend "shall be freely given when justice so

requires," a plaintiff does not "have an absolute or automatic right to amend."  *United States v.*

*Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005).  Leave is properly denied when there

has been undue delay, bad faith, or dilatory motive on the part of the movant, if the amendment

would cause undue prejudice to the non-movant, or if the amendment would be futile.  *Bell v.*

*Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998).

---

[1] By its first amendment, Nordyne amended its complaint to name RBC Manufacturing Corp. as the named defendant, in place of "Regal Beloit Electric Motors," which Nordyne had identified as the named defendant in its original complaint.

Here, as detailed below, leave to amend should be denied for two independent reasons: (i) Nordyne fails to meet the pleading standard applicable to claims of inequitable conduct and thus amendment would be futile; and (ii) Nordyne unduly delayed seeking leave to amend its complaint.

**A.      Nordyne Fails to Meet the Pleading Standard Set forth In *Exergen* and, Thus, Amendment Would Be Futile.**

**1.      Applicable Law.**

To discourage indiscriminate accusations of fraud, the Federal Circuit has long required that inequitable conduct claims be pled with particularity under Federal Rule of Civil Procedure 9(b). *See, e.g.*, *King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 1010 (C.C.P.A. 1981). The Federal Circuit recently reiterated and clarified this pleading standard, requiring a party's inequitable conduct pleading specifically to identify the specific "who, what, when, where, and how" of the material omission allegedly committed before the PTO. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). The "who" element requires that the pleading "include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29. The pleading must also specify "what" particular claims (and which limitations in those claims) a given reference is relevant to, and "where" in those references the material information is found. *Id.* In addition, the pleading must demonstrate "why" the information is material and not cumulative, and "how" the examiner would have used the information in assessing patentability of the claims. *Id.* at 1329-30.

4

Here, Nordyne's proposed SAC includes claims of inequitable conduct in Count III and Count IV.  Neither count meets the pleading standard set forth in *Exergen*.

### 2.    In Count III, Nordyne Fails to Identify the "Why" Element.

Count III—in which Nordyne alleges that the '896 Patent was improperly withheld—is fatally deficient because it fails to adequately set forth "why" the '896 Patent is material and not cumulative.  *Exergen*, 575 F.3d at 1329-30.

Although Nordyne alleges that the '896 Patent, either alone or in combination with other prior art references, renders certain claims of the '058 Patent "invalid" (*see* proposed SAC ¶¶ 45-46), Nordyne fails to identify "why" the '896 Patent is *not cumulative* of the numerous prior art references that were already of record in the prosecution before the PTO.  In that regard, Nordyne fails to identify any concept (or other information) that is disclosed in the '896 Patent that was not already disclosed in the prior art references of record.

Rather than identify any information in the '896 Patent that was not already of record during prosecution of the '058 Patent, Nordyne simply states that "[t]he '896 Patent is not cumulative, for example, because, while the USPTO apparently did not believe any issued claim of the '058 Patent to be invalidated by any reference, or combination of references, of record during the prosecution of the application of the '058 Patent, the '896 Patent either alone or in combination with one or more other prior art references, renders certain claims of the '058 Patent, including at least issued Claims 58, 59 and 63, invalid."  (Proposed SAC ¶ 49.)  In addition, Nordyne refers the Court to a claim chart in which Nordyne purports to compare portions of the '896 Patent to claim 58 of the '058 Patent. (Proposed SAC ¶ 45.)  But critically, Nordyne fails to identify any information in the '896 Patent that was not already of record in the

prosecution of the '058 Patent.  As a result, Nordyne fails to allege why the '896 Patent is not

cumulative.

Nordyne's failure to identify "why" the 896 Patent is not cumulative is not surprising,

since the '896 Patent is, in fact, cumulative of at least U.S. Patent No. 5,019,757 (the "'757

Patent")—a prior art reference that was before and was considered by the examiner during

prosecution of the '058 Patent.  The '757 Patent discloses many of the same elements that are

disclosed in the '896 Patent, including the storage of data in memory.  Neither the '896 Patent

nor the '757 Patent invalidates any claim of the '058 Patent, however, since neither discloses (or

renders obvious) *programmable, non-volatile* memory, a key feature of the '058 Patent.  (*See*

Claim Construction Order (D.I. 66), at 10 (construing "memory," as used in the '058 Patent, as

"programmable, non-volatile memory, physically distinct from any ROM or RAM inherent to

the microprocessor").

### 3. In Count IV, Nordyne Fails to Identify the "Who," "What," "Why," "When," "Where," and "How" Elements.

In Count IV, Nordyne alleges inequitable conduct based on General Electric's alleged

"disclosure" and "offer for sale or sale" of the alleged invention claimed in the '058 Patent.  (*See*

proposed SAC ¶ 57.)  As detailed below, Nordyne's allegations are fatally deficient.

### a) Nordyne's allegations of a prior art "disclosure."

Nordyne first alleges that the named inventors committed inequitable conduct by

deliberately withholding from the PTO the alleged fact that RBC's predecessor corporation,

General Electric (and specifically, named inventor Rajendra K. Shah), sent a letter to Trane (a

long-time General Electric customer), disclosing the invention of the '058 Patent to Trane in

October 1990 (the "Trane Letter")  (*See* proposed SAC ¶¶ 58, 59, 62-63.)

6

Nordyne's allegations are inadequate.  Nordyne fails to identify *why* the Trane Letter is

material to the prosecution of the '058 Patent, or *how* an examiner would have used the Trane

Letter in assessing patentability.  To qualify as a prior art "printed publication" under applicable

patent law, "before the critical date the reference must have been sufficiently accessible to the

public interested in the art; dissemination and public accessibility are the keys to the legal

determination whether a prior art reference was 'published.'" *Constant v. Advanced Micro-*

*Devices, Inc.*, 848 F.2d 1560, 1568 (Fed. Cir. 1990); *accord Northern Telecom, Inc. v. Datapoint*

*Corp.*, 908 F.2d 931, 936 (Fed. Cir.  1990) ("A document, to serve as a 'printed publication',

must be generally available.").  Here, Nordyne has not identified any facts from which a

reasonable fact finder could infer that either the Trane Letter was generally available to the

public.  Nordyne does not allege that the Trane Letter was provided by General Electric to Trane

in the absence of any duty to keep the information confidential.  And Nordyne fails to allege that

the Trane Letter was sent to or disclosed to anyone other than Trane itself.  Nordyne thus fails to

identify *why* the Trane Letter is material to the prosecution of the '058 Patent, or *how* an

examiner would have used the Trane Letter in assessing patentability.  And, because Nordyne

fails to identify facts necessary to plead *why* the Trane Letter was material, which itself is fatal

under Rule 9(b), Nordyne fails to plead the "who" element—that an identified individual

involved with the prosecution of the '058 Patent knew of the Trane Letter and deliberately

withheld it with intent to deceive the PTO.

In addition to making allegations about the Trane Letter, Nordyne ambiguously suggests

that RBC document production number RBC00006868 might constitute a material prior art

"printed publication."  (*See* proposed SAC ¶ 60.)  Nordyne, however, fails to allege

unequivocally that RBC00006868 is a printed publication.  And, in any event, Nordyne fails to

name any individual involved in the prosecution of the application for the '058 Patent *who* knew

of RBC00006868 and deliberately withheld it, *where* in RBC00006868 any material information

is found, or *when* any person involved in the prosecution knew allegedly knew of

RBC00006868.  Indeed, Nordyne does not even attach a copy of RBC00006868 to its proposed

SAC.

b)       **Nordyne allegations of an "offer for sale or sale."**

Nordyne next alleges that the named inventors committed inequitable conduct by

deliberately withholding the alleged fact that General Electric "offered for sale and sold" the

invention claimed in the '058 Patent (namely, the next generation indoor blower ICM), more

than a year before the filing of the application for the '058 Patent.  (*See* proposed SAC ¶¶ 57, 60,

61.)

Nordyne, however, fails to allege the "who" element.  Specifically, Nordyne fails to

identify any person *who* was involved in the prosecution of the '058 Patent and knew of any such

offers for sale or sales occurring more a year before the application filing date, let alone such a

person who deliberately withheld information about such sales from the PTO.

In an apparent attempt to give the appearance of pleading the "who" element, Nordyne

ambiguously alleges that "[t]he '058 Patent issued on January 7, 1997, approximately six years

after, at least Mr. Archer, General Electric, the other named inventors of the '058 Patent, and

others associated with the application for the '058 Patent, knew of and first learned that General

Electric had disclosed, offered for sale, and sold products embodying the alleged invention

claimed in the '058 Patent to third-parties."  (Proposed SAC ¶ 70.)  But these allegations are

vague and deficient.  Nordyne uses the ambiguous phrases "approximately six years" and

"disclosed, offered for sale, and sold products," and fails to allege that Mr. Archer or any other

8

specific individual[2] associated with the prosecution of the '058 Patent actually knew that General

Electric offered for sale or sold products embodying any of the inventions of the '058 Patent

*before the critical date* on May 27, 1991 (one year before the filing date of the application for the

'058 Patent).  And, in any event, Nordyne fails to allege any underlying *facts* from which a court

could reasonably infer that Mr. Archer (or any other specific individual) (i) had knowledge of

any such offers for sale or sales, and (ii) withheld this information with a specific intent to

deceive the PTO.  Nordyne's failure to do so is a fatal defect.  *Exergen*, 575 F.3d at 1328-29.

> c)    **Nordyne's allegations about the "Next Generation Indoor Blower ICM" Itself.**

Although Nordyne's allegations are less than clear, Nordyne also appears to allege that

the next-generation indoor blower ICM, by itself, was material prior art that was deliberately

withheld.  (*See, e.g.*, proposed SAC ¶ 65.)  Such allegation provides no help to Nordyne because

Nordyne fails to identify *why* the existence of next-generation indoor blower ICM was material

to the prosecution of the of the '058 Patent, *how* the examiner would have used information

about its mere existence, *what* particular claims its existence is relevant to, or *who* deliberately

withheld information about its existence with an intent to deceive the PTO.

**B.    Nordyne's Claim Based on the '896 Patent Is Untimely.**

Apart from Nordyne's failure to meet the pleading standard of Rule 9(b), Nordyne's

motion for leave should be denied for another independent reason:  Nordyne's effort to assert a

inequitable conduct claim based on the '896 Patent (as set forth in Count III) is untimely.

---

[2] Nordyne's generic references to "General Electric" and "others associated with the application for the '058 Patent" are not sufficiently particular and fail to meet the pleading standard set forth in *Exergen*.  575 F.3d at 1329.

Nordyne has been aware of the '896 Patent for a minimum of five months, as shown by the fact that Nordyne itself identified the '896 Patent in its own Rule 26 initial disclosures in October 2010.  (*See* Ex. 1 at 10.)  Now, with fact discovery set to close shortly (on May 4, 2011), Nordyne seeks to assert an inequitable conduct claim based on the '896 Patent, but Nordyne has provided no justification as to why, if Nordyne believes the claim has merit (which RBC denies), it waited more than five months to seek to assert the claim.  The only conceivable reason is Nordyne's lack of diligence.  *See Bell*, 160 F.3d at 454.

In an misguided attempt to explain away this lack of diligence, Nordyne claims that "newly discovered facts," including facts it obtained in recent depositions, support Nordyne's assertion in Count III that the '896 Patent is material prior art and was improperly withheld from the PTO.  (*See* Mot'n at 10.)  Nordyne, however, fails to identify any such "newly discovered facts," and instead states in its motion that the '896 Patent "remarkably, plainly discloses the alleged invention claimed in the '058 Patent."  (Mot'n at 3.)  Nothing in that statement suggests any relevant facts have come to light as a result of Nordyne's alleged "diligence" in deposing Mr. Shah or Mr. Archer.  (*See* Mot'n at 8.)  And the remaining facts that Nordyne alleges as "support" for Count III—including that Rajendra K. Shah is a named inventor of both the '058 and '896 Patents, and that General Electric Company is the listed assignee of both the '058 and '896 Patents—were plainly available and readily apparent to Nordyne when Nordyne identified the '896 Patent in its Rule 26 initial disclosures more than five months ago.  Even if Nordyne listed the '896 Patent in its Rule 26(a) disclosures without having analyzed it, Mr. Shah's "partial-deposition," the preparation for which Nordyne credits for its discovery that the '896 Patent "remarkably, plainly discloses the alleged invention claimed in the '058 Patent," took place on February 17, 2011, almost *two months before* Nordyne filed its motion for leave.  (*See*

10

Mot'n at 5-6.)  And presumably Nordyne prepared for the Shah deposition prior to that date. Nordyne's delay is inexplicable.

Nordyne's delay in asserting this new legal theory has prejudiced RBC.  *See Bell*, 160 F.3d at 454.  Fact discovery is scheduled to close on May 4, 2011, and, thus, the deadline for serving interrogatories (which must be served 30 days before the close of discovery) already has passed.  Had Nordyne not delayed in asserting its inequitable conduct claim until after the deadline for serving interrogatories, RBC would have served one or more interrogatories on Nordyne directed to its inequitable conduct claim, including an interrogatory seeking the alleged factual bases for the claim.  As a result of Nordyne's delay, RBC has been deprived of a fair opportunity to take full discovery on Nordyne's claims.  Given Nordyne's undue and unexplained delay and the resulting prejudice to RBC, Nordyne's motion for leave should be denied.

//

//

//

//

//

//

//

//

//

//

//

## IV.    CONCLUSION

For the foregoing reasons, RBC respectfully requests that this Court deny Nordyne's

motion for leave to file its proposed Second Amended Complaint for Declaratory Judgment.


 Dated: April 18, 2011

Respectfully submitted,

/s/ Nathan L. Walker
Robert J. Gunther, Jr. *(pro hac vice)*
Omar A. Khan *(pro hac vice)*
Martin E. Gilmore *(pro hac vice)*
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
Tel.: (212) 230 8800
Fax: (212) 230 8888

Nathan L. Walker *(pro hac vice)*
Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 858 6000
Fax: (650) 858 6100

Daniel V. Williams *(pro hac vice)*
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel.: (202) 663 6000
Fax: (202) 663 6363

Matthew Sauter
Kevin A. Sullivan
msauter@ss-law.net
ksullivan@ss-law.net
SAUTER SULLIVAN LLC
3415 Hampton Avenue
St. Louis, MO 63139
Tel.: (314) 768-6802
Fax: (314) 781-2726

***ATTORNEYS FOR RBC MANUFACTURING***
***CORPORATION***

12