**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

NORDYNE, INC.,                                    )
                                                  )
    Plaintiff and Counterclaim-Defendant,    )
                                                  )
    vs.                                       )        Case No. 4:09-cv-00203-ERW
                                                  )
RBC MANUFACTURING CORP.,                          )
                                                  )
    Defendant and Counterclaim-Plaintiff.     )
                                                  )

**REPLY MEMORANDUM IN SUPPORT OF RBC MANUFACTURING**
**<u>CORPORATION'S MOTION FOR A PROTECTIVE ORDER</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION........................................................................................... 1

II.   NORDYNE HAS NOT PRESENTED ANY LEGITIMATE GROUNDS FOR
      DENYING RBC'S MOTION. ...................................................................... 2

      A.    "Contention Depositions" Would Be Duplicative and Overly Burdensome In
            Light of the Alternative Means of Discovery Available to the Parties.................. 2

      B.    The Weight of the Authority Supports The Issuance of a Protective Order........... 4

III.  NORDYNE'S OTHER ARGUMENTS ARE IRRELEVANT. .................................. 7

IV.   CONCLUSION .............................................................................................. 8

# TABLE OF AUTHORITIES

Federal Cases

*Amp Inc. v. Fujitsu Microelectronics, Inc.*,
 853 F. Supp. 808 (M.D. Pa. 1994) .................................................................................... 6

*Ecrix Corp. v. Exabyte Corp.*,
 95 F. Supp. 2d 1155 (D. Colo. 2000) ............................................................................... 5

*Exxon Research & Eng'g Co. v. United States*,
 44 Fed. Cl. 597 (1999) ............................................................................................. 3, 5, 6

*In re Indep. Serv. Org. Antitrust Litig.*,
 168 F.R.D. 651 (D. Kan. 1996)...................................................................................... 3, 5

*Iris Corp. Berhad v. United States*,
 84 Fed. Cl. 489 (2008) ................................................................................................... 5, 6

*McCormick-Morgan v. Teledyne Indus. Inc.*,
 134 F.R.D. 275 (N.D. Cal. 1991)................................................................................ 3, 5, 6

*Nycomed U.S., Inc., v. Glenmark Generics Ltd.*,
 No. 08-CV-5023, 2009 WL 3463912 (E.D.N.Y. 2009) ................................................. 3, 4

*Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.*,
 137 F.R.D. 267 (D. Neb. 1989)......................................................................................... 6

*SmithKline Beecham Corp. v. Apotex Corp.*,
 No. 98 C 3952, 2000 WL 116082 (N.D. Ill. Jan. 24, 2000) .......................................... 3, 5

*UniRAM Technology, Inc. v. Monolithic System Technology, Inc.*,
 No. C 04-1268, 2007 WL 915225 (N.D. Cal. 2007) ........................................................ 7


Federal Rules

Federal Rule of Civil Procedure 26(b)(4)(D)............................................................................. 3, 4

Federal Rule of Civil Procedure 30(b)(6) ……………………………………………..*passim*


Local Rules

Local Rule 37-3.04(B) ……………………………………………………………………………7

## I.   INTRODUCTION

There is no dispute that Nordyne has served a number of contention interrogatories seeking virtually the same information as the 30(b)(6) topics at issue in the motion, that RBC has responded to those interrogatories by providing Nordyne with the factual bases for RBC's claims and defenses, and that the expert discovery phase, which begins on May 25, 2011, will provide further opportunities for the parties to develop and test each other's infringement and damages theories.

In opposing RBC's motion, Nordyne has not addressed the principal issues raised in RBC's opening brief, namely that the objectionable Rule 30(b)(6) topics are duplicative of Nordyne's contention interrogatories, and that the applicable case law holds that a party should not be required to prepare a lay witness to testify on many of the quasi-legal arguments that form the basis for its infringement and damages theories in a complex patent case.  Nordyne has not claimed that interrogatory responses and expert discovery would be inadequate as a substitute for 30(b)(6) testimony.  Indeed, nowhere in its opposition brief does Nordyne contend that it would be prejudiced or harmed if the Court were to grant RBC's motion.  There is simply no explanation or reasoned basis for why Nordyne needs to take a 30(b)(6) deposition on RBC's contentions, when it has several alternative and less burdensome means of obtaining the very same information.  Nonetheless, Nordyne insists that discovery must proceed by way of a "contention deposition" of RBC's corporate representatives, an approach rejected by the majority of courts that have considered the issue.

RBC respectfully submits that this Court should similarly reject Nordyne's overly broad and burdensome 30(b)(6) notice, and grant RBC's motion.

## II.  NORDYNE HAS NOT PRESENTED ANY LEGITIMATE GROUNDS FOR DENYING RBC'S MOTION.

### A.  "Contention Depositions" Would Be Duplicative and Overly Burdensome In Light of the Alternative Means of Discovery Available to the Parties.

Nordyne has already received discovery concerning the factual and legal bases for RBC's claims and defenses, and it will continue to receive such information regardless of whether RBC is required to designate a corporate representative to testify on RBC's contentions.  In its opening brief, RBC pointed out that Nordyne has served, and RBC has responded to, contention interrogatories on most of the 30(b)(6) topics at issue in this motion.  (RBC Br. at 4-10.)[1]  For example, RBC's responses to Interrogatories 3, 4, and 9 provide detailed information regarding the accused products, a claim chart identifying the features in the accused products that infringe the '058 patent, and the basis of RBC's allegations of willful infringement.  (Walker Decl. Ex. E at 6-7, 10-11.)  Those responses effectively address Nordyne's Topics 1, 4 and 8, which seek the factual bases for RBC's allegations of infringement and willful infringement.  In responding to Interrogatory 13, RBC has already addressed Nordyne's request for RBC's damage calculations and theories, which are the subject of Topics 11 and 12.  (Walker Decl. Ex. E at 13.).  And RBC's response to Interrogatory 11 addresses Nordyne's Topic 19, which also seeks information relating to claims of infringement against other persons or entities.  (Walker Decl. Ex. E at 11-12.)  In addition, expert discovery in this case will commence on May 25, 2011, at which point both parties will have further opportunities to test the bounds of each other's infringement and damages contentions.

---

[1]  Topics 2 and 3 seek deposition testimony on "RBC's Responses to Nordyne's Interrogatories" and "RBC's Responses to Nordyne's Requests for Production of Documents and Things."  As noted in RBC's opening brief, the discovery responses speak for themselves and any additional deposition testimony on those topics would necessarily intrude upon the attorney-client privilege and/or the work product doctrine.  (RBC Br. at 7.)

Nordyne's 30(b)(6) topics are improper for the independent reason that they are not limited to purely factual inquiries, notwithstanding Nordyne's conclusory assertion to the contrary.  (Nordyne Opp. Br. at 4.)  As the *McCormick* decision makes clear:

> Patent cases turn peculiarly on a conceptually dense dynamic between physical objects, words in claims, and principles of law. Understanding that dynamic, and describing the relationships that serve as the bases for a given parties' contentions, is something best done by patent lawyers, and best done after at least most other discovery has been completed. After all, in cases like these, *a substantial part of 'the bases for contentions' really consists of quasi-legal argument*.

*McCormick-Morgan v. Teledyne Indus. Inc.*, 134 F.R.D. 275, 287 (N.D. Cal. 1991) (emphasis added).  In effect, Nordyne is asking RBC to prepare a lay witness to recite from memory the various grounds for RBC's infringement and damages contentions, which would require not only an understanding of the relevant principles of patent law, but also an appreciation of the interplay between those principles and the facts of this case.  Discovery of that sort is properly received through contention interrogatories and expert witnesses.  *See, e.g.*, *McCormick-Morgan*, 134 F.R.D. at 286-87; *Nycomed U.S., Inc., v. Glenmark Generics Ltd.*, No. 08-CV-5023, 2009 WL 3463912, *1 (E.D.N.Y. 2009); *Exxon Research & Eng'g Co. v. United States*, 44 Fed. Cl. 597 (1999); *In re Indep. Serv. Org. Antitrust Litig.*, 168 F.R.D. 651, 654–55 (D. Kan. 1996); *SmithKline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082, at *9 (N.D. Ill. Jan. 24, 2000).

In its opposition brief, Nordyne suggests that Mr. William Archer, a former RBC employee, would be capable of testifying on RBC's infringement contentions, because Mr. Archer is "extremely knowledgeable" with respect to the accused products and "does not need any of Nordyne's documents."  (Nordyne Opp. Br. at 12-13.)  Even if the Court were to find that Nordyne's 30(b)(6) topics are proper, Mr. Archer would not be an appropriate corporate designee on infringement topics for at least two reasons: (1) Mr. Archer is a work-product consultant whose knowledge of the accused products derives exclusively from his consultancy work, which is protected from discovery under Federal Rule of Civil Procedure 26(b)(4)(D); and

(2) Mr. Archer has not been able, under the Protective Order in this case, to review any of Nordyne's highly confidential documents, which are central to RBC's theories of infringement and validity.  It is elementary that facts gleaned from discovery of an accused infringer's documents will form the factual basis underlying a patent infringement claim.  Yet, RBC cannot prepare *any* corporate designee to testify as to the factual bases for its infringement allegations because the Protective Order expressly disqualifies all RBC employees from reviewing the Nordyne documents that contain facts critical to RBC's infringement theories.  (RBC Br. at 6-7.)[2]

**B.     The Weight of the Authority Supports The Issuance of a Protective Order.**

Nordyne ignores the case law cited in RBC's opening brief and then proceeds to cite four cases, all of which are inapposite, in an effort to show that the case law  "overwhelmingly" supports the denial of RBC's motion.  (Nordyne Opp. Br. at 6-8.)  However, even a cursory review of the cases cited by the parties reveals that the weight of the authority favors RBC's position.

For example, Nordyne contends that *Nycomed* is inapplicable because the defendant, Glenmark, had filed the motion to compel as a tactical maneuver.  (Nordyne Opp. Br. at 11.) The court in *Nycomed* expressly stated, however, that its ruling on the motion would be no different "even if Glenmark had acted with more alacrity."  *Id*. at *1.  Moreover, the 30(b)(6) topics at issue in this motion are identical to the topics rejected in *Nycomed*, such as "Nycomed's decision to sue Glenmark," "the factual and legal bases for Nycomed's complaint against

---

[2]     Nordyne vaguely suggests that RBC could remedy the confidentiality issue by seeking the Court's intervention to modify the Protective Order in this case.  (Nordyne Opp. Br. at 13.) Notably, however, Nordyne *has not* offered to stipulate to a modification that would permit Mr. Archer to review Nordyne's documents that have been designated highly confidential under the Protective Order.  And even if Nordyne were to agree to such a stipulation, the problem would remain that preparing Mr. Archer to testify on RBC's contentions would be an unreasonable burden, particularly given that contention interrogatories and expert discovery are the preferred means for discovering a party's contentions.

Glenmark and Nycomed's claim that Glenmark's ANDA infringes the '699 patent," and "the factual and legal bases for all of the Nycomed's claims and defenses in this action."  *Id*. at *1 n.2.

Nordyne does not even attempt to distinguish the other four cases cited in RBC's opening brief—*SmithKline Beecham*, *Exxon*, *In re Independent Service Organizations Antitrust Litigation*, and *McCormick-Morgan*—except to say that RBC noticed many of the same topics that were at issue in those cases.[3]  That particular argument is a non sequitur because, as RBC stipulated in its opening brief, RBC is prepared to withdraw the contingent topics that seek testimony on Nordyne's contentions in this case.  (RBC Br. at 10 (Topics 19 and 41-43).)

Furthermore, the case law cited in Nordyne's opposition brief is inapposite.  In *Ecrix Corp. v. Exabyte Corp.,* 95 F. Supp. 2d 1155 (D. Colo. 2000), the patentee took the position that it was not required to identify any of the allegedly infringing features of the accused product, even in response to a specific contention interrogatory directed to that information.  *Id*. at 1156-57.  The court allowed the Rule 30(b)(6) topics seeking the factual bases of infringement allegations because the information was deemed "relevant to [the alleged infringer's] claims of patent misuses and antitrust violations."  *Id*. at 1158.  Here, Nordyne has not made any allegation of patent misuse or violations of antitrust law, nor has RBC refused to answer Nordyne's contention interrogatories seeking the factual bases for RBC's allegations of infringement.

In *Iris Corp. Berhad v. United States*, 84 Fed. Cl. 489 (2008), the court denied the "Plaintiff's motion for a protective order seeking to preclude *any* depositions of Plaintiff's corporate representatives noticed under Rule 30(b)(6)"  *Id*. at 490 (emphasis added).  In so

---

[3]   Nordyne's attack on *SmithKline Beecham* consists solely of vague guarantees that its topics in no way threaten to pierce the attorney-client privilege or work product doctrine.  And with respect to *Exxon*, Nordyne argues that Topic 4 does not relate to claim construction issues, but to "the factual basis for asserting the claims" of the '058 patent.  (Nordyne Opp. Br. at 13-14.)  That argument misses the mark.  In holding that claim construction issues are not properly the subject of 30(b)(6) testimony, the Court in *Exxon* adopted the majority view that "[p]roperly worded contention interrogatories should provide the information that the Defendant needs," particularly where the issues "may be too complex for a deponent, who is not an attorney, to answer questions competently."  *Exxon*, 44 Fed. Cl. at 602.

holding, the *Iris* court noted that "it is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Id*. at 494 (citation and internal quotation marks omitted). In this case, however, Nordyne has already elicited testimony from one of RBC's corporate designees and from all five inventors of the '058 patent regarding their knowledge of the issues in this case. RBC has no objection to further 30(b)(6) depositions, and is seeking only to preclude Nordyne from eliciting deposition testimony on the legal and factual bases for RBC's contentions.

In *Amp Inc. v. Fujitsu Microelectronics, Inc*., 853 F. Supp. 808 (M.D. Pa. 1994), the defendant FMI claimed that the 30(b)(6) "topics required knowledge FMI did not have." *Id*. at 831. The court's decision rested on its finding that "[i]t is not unreasonable to conclude that someone at FMI believed there were factual bases" for the contentions and counterclaims in its answer. *Id*. The court in *Amp* had no occasion to reach the related, but distinct, question of whether it would be more appropriate to obtain the factual bases for the defendant's contentions through alternative, less burdensome means such as contention interrogatories and expert discovery.

Finally, *Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267 (D. Neb. 1989), an insurance case, involved Rule 30(b)(6) topics directed to the issue of whether the insurance company's claims handling process caused its reinsurance company damages. The court permitted the 30(b)(6) deposition to proceed because the deponent was an accountant with significant experience in claims handling. *Protective*, 137 F.R.D. at 282. Unlike *Protective*, this is a patent case in which a request for discovery of a party's contentions is, in effect, a request for quasi-legal argument, requiring a 30(b)(6) designee to undertake the overwhelming task of memorizing and then accurately recapitulating, orally in a deposition, the complex factual and legal details that underlie the party's infringement, validity, and damages theories. *See, e.g.*, *Exxon*, 44 Fed. Cl. at 602 (distinguishing *Protective* on the ground that "questions about how a device infringes a patent" are materially different from "questions about a claims procedure"); *see also McCormick-Morgan*, 134 F.R.D. at 287.

## III.    NORDYNE'S OTHER ARGUMENTS ARE IRRELEVANT.

Nordyne makes two arguments that have no bearing on the merits of RBC's motion, but are addressed briefly because they appear to be calculated to distract attention from the issues actually raised by the motion.

*First*, Nordyne contends that RBC's motion is untimely and prejudicial.  To the contrary, the instant motion was timely filed under Local Rule 37-3.04(B), which provides that "[a]ny motion relating to a deposition, including but not limited to a motion to quash or modify a deposition subpoena or for a protective order, shall be filed before the deposition date."  There was no "deposition date" for the topics that are the subject of this motion, because RBC did not (and, by virtue of the protective order, could not) designate a corporate witness on those topics. Discovery in this matter is still ongoing, and the parties contemplated deposing each other's 30(b)(6) designees through the close of fact discovery on May 4, 2011.  Accordingly, there can be no cognizable prejudice resulting from RBC's decision to timely exercise its right to seek judicial relief against overly broad and burdensome discovery.  As noted above, Nordyne has not suffered any prejudice *at all* because it has already received (or will receive) all the discovery it seeks either through contention interrogatories and/or during the expert discovery phase of this case.

*Second*, Nordyne argues that granting the motion would create a "double standard" permitting RBC to depose Nordyne witnesses on topics that Nordyne would be foreclosed from exploring with RBC's witnesses.  (Nordyne Opp. Br. at 8-11.)  That argument is meritless in light of the procedural posture of this case.  There can be no "double standard" when RBC has yet to take a 30(b)(6) deposition on any of Nordyne's infringement and damages contentions in this case.  In fact, Nordyne recently informed RBC that it would not designate corporate representatives on *any* 30(b)(6) topics relating to the operation of the accused products, pending a decision on the instant motion.  By contrast, in the case cited by Nordyne, *UniRAM Technology, Inc. v. Monolithic System Technology, Inc.*, No. C 04-1268, 2007 WL 915225 (N.D. Cal. 2007), the defendant had already taken 30(b)(6) testimony on objectionable topics, and then

later moved to quash similar topics.  *Id*. at \*3 ("It would be unfair to prevent UniRAM from conducting its own 30(b)(6) deposition on contention topics where TSMC has already done so.").

More importantly, RBC has already represented that if the Court were to grant the motion, RBC would be willing to withdraw the topics in its own 30(b)(6) notice directed to Nordyne's contentions.  (RBC Br. at 10 (Topics 19 and 41-43).)  Thus, the parties are on equal footing in that, if the Court were to grant the motion, neither party would be required to prepare a corporate witness to testify on the factual and legal bases for its contentions.  Nordyne's complaints regarding a potential "double standard" are unfounded, and should be disregarded.

## IV.    CONCLUSION

For the foregoing reasons, RBC respectfully requests that the Court issue a protective order against Topics 1, 2, 3, 4, 8, 11, 12, and 19 of Nordyne's 30(b)(6) Notice.

- 8 –

RBC MANUFACTURING CORP'S REPLY TO NORDYNE'S OPPOSITION
TO RBC'S MOTION FOR A PROTECTIVE ORDER
Case No. 4:09-cv-00203 - ERW

April 22, 2011

Respectfully submitted:

/s/ Robert J. Gunther, Jr
Robert J. Gunther, Jr. *(pro hac vice)*
Omar A. Khan *(pro hac vice)*
Martin Gilmore *(pro hac vice)*
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
Tel.: (212) 230 8800
Fax: (212) 230 8888

Nathan L. Walker *(pro hac vice)*
Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 858 6000
Fax: (650) 858 6100

Matthew Sauter
Kevin A. Sullivan
msauter@ss-law.net
ksullivan@ss-law.net
SAUTER SULLIVAN LLC
3415 Hampton Avenue
St. Louis, MO 63139
Tel.: (314) 768-6802
Fax: (314) 781-2726