# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| NORDYNE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09-CV-203 |
| | ) | |
| | ) | |
| RBC MANUFACTURING | ) | |
| CORPORATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Comes Now NORDYNE INC. ("Nordyne"), by and through its attorneys, and for its Second Amended Complaint For Declaratory Judgment against RBC MANUFACTURING CORPORATION ("RBC"), states as follows:

### Nature of the Action

1.      This Second Amended Complaint seeks a judgment declaring that the claims of United States Patent No. 5,592,058 ("the '058 Patent") are invalid and/or not infringed by Nordyne and/or unenforceable.  A true and accurate copy of the '058 Patent is attached hereto as Exhibit A.

### Parties

2.      Nordyne is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 8000 Phoenix Parkway, O'Fallon, Missouri 63368.

3.      On information and belief, RBC is a corporation organized and existing under the laws of the State of Wisconsin, having a principal place of business at 100 East Randolph Street,

Wausau, Wisconsin, 54401.

### Jurisdiction and Venue

4.      This Court has subject matter jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., under 28 U.S.C. §§ 1331 and 1338(a), and under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.  This Court also has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, in that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and diversity of citizenship exists among the parties.

5.      This Court has personal jurisdiction over RBC because, *inter alia*, on information and belief, it regularly and actively does business in this judicial district, and purposefully directed acts at a resident in this district giving rise to this Second Amended Complaint.

6.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1391 and 1400.

### Acts Giving Rise to the Claims

7.      Beginning in or about late 2008, employees of RBC expressly communicated to Nordyne that RBC concluded and believes that Nordyne's G7 furnace systems and iQ Drive 23-SEER air conditioning systems infringe a number of the claims of the '058 Patent.

8.      RBC has repeatedly reiterated to Nordyne its accusation that Nordyne's G7 furnace systems and iQ Drive 23-SEER air conditioning systems infringe a number of the claims of the '058 Patent.  RBC has repeatedly stated and threatened that unless Nordyne agreed to cease purchasing the components accused of infringement from others, and instead purchases such components from RBC, RBC will take action against Nordyne.  True to its threats, RBC filed a Counterclaim against Nordyne in response to both the initial and First Amended Complaint for Declaratory Judgment in this action.

9.      RBC accused Nordyne of infringing forty-four of the claims of the '058 Patent,

2

however, in this Court's recent *Markman* Order, the Court held all but four of the forty-four asserted claims are invalid. Notwithstanding the Court's *Markman* Order, RBC continues to assert and accuse Nordyne of infringing Claims 58, 59, 63 and 73 of the '058 Patent.

10.     Nordyne expressly denies that it has in any way or manner infringed the '058 Patent and/or any remaining and valid, enforceable claims thereof, and states that it is entitled to make, use, offer for sale, sell, and otherwise commercially exploit its G7 furnace systems and iQ Drive 23-SEER air conditioning systems in accordance with its rights and interests therein without interference from RBC.

11.     By its allegations, threats, conduct, actions, and lawsuits, RBC has created an actual and justiciable case and controversy between itself and Nordyne concerning whether the '058 Patent's claims are valid, whether the '058 Patent is enforceable, and whether Nordyne is infringing any valid and enforceable claim of the '058 Patent.

## Count I
## Declaratory Judgment of Non-Infringement of U.S. Patent No. 5,592,058

12.     Nordyne hereby incorporates by reference each and every allegation set forth in Paragraphs 1 through 11 of this Second Amended Complaint as if fully set forth and restated herein.

13.     Nordyne has not infringed, and is not infringing, upon any claims of the '058 Patent.

14.     By reason of the proceedings in the U.S. Patent and Trademark Office during the prosecution of the application that matured into the '058 Patent, and related applications, and in particular, the applicants' conduct and/or their admissions during those proceedings, defendant RBC is precluded and estopped from asserting that Nordyne has infringed upon any of the claims of the '058 Patent.

15.     Any claims of the '058 Patent that may not be, arguendo, held invalid and/or unenforceable are so restricted in scope that Nordyne has not infringed, and does not infringe, upon any such claims.

**Count II**
**Declaratory Judgment of Invalidity of U.S. Patent No. 5,592,058**

16.     Nordyne hereby incorporates by reference each and every allegation set forth in Paragraphs 1 through 15 of this Second Amended Complaint as if fully set forth and restated herein.

17.     Upon information and belief, all of the claims of the '058 Patent are invalid, void and/or unenforceable for failure to comply with the requirements of the patent laws of the United States, 35 U.S.C. § 100, *et seq.*, including, but not limited to, those set forth in 35 U.S.C. §§ 101, 102, 103 and/or 112.

18.     Upon information and belief, all of the claims of the '058 Patent are invalid, and void, for one or more of the following reasons:

(a)     The alleged invention was not new before the applicants' alleged conception and/or reduction to practice;

(b)     The alleged invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the alleged invention thereof by the applicants for patent;

(c)     The alleged invention was patented or described in a printed publication in this or a foreign country, or was in public use, on sale or sold in this country, more than one year prior to the date of the application thereof in the United States;

(d)     The alleged invention was described in a patent granted on an application for patent by another filed in the United States before the alleged invention thereof by the applicants for the patent;

(e)     The patentees did not themselves invent the subject matter claimed;

(f)     The patentees abandoned the alleged invention;

(g)     Before the alleged invention was made by the patentees, said alleged invention was made in this country by others who had not abandoned, suppressed or concealed the same;

(h)     The difference between the subject matter sought to be patented in the '058 Patent and the prior art are such that the subject matter as a whole would have been obvious at the time the alleged invention was made to a person having ordinary skill in the art to which said subject matter pertains;

(i)     The alleged invention does not involve the exercise of inventive faculty, but only the judgment, knowledge and skill possessed by persons having ordinary skill in the art at the time of the alleged invention thereof by the patentee(s);

(j)     The '058 Patent does not contain a written description of the alleged invention, and of the manner and process of making and using them, in such full, clear, concise and exact terms to enable one skilled in the art to which it is directed to make and use it, and, further, does not set forth the best mode contemplated by the alleged inventors of carrying out the alleged invention;

(k)     The asserted claims do not particularly point out and distinctly claim the subject matter which the applicants and/or patentees regard as their invention; and

(l)     The asserted claims fail to satisfy 35 U.S.C. § 101 as the alleged invention does not transform an article and/or is not tied to a particular machine.

### Count III
### Declaratory Judgment of Unenforceability of U.S. Patent No. 5,592,058

19.     Nordyne hereby incorporates by reference each and every allegation set forth in Paragraphs 1 through 18 of this Second Amended Complaint as if fully set forth and restated herein.

20.     The '058 Patent and each and every claim of the '058 Patent is unenforceable as one or more individuals associated with the filing and prosecution of the application for the '058 Patent failed to comply with his, her, and/or their duty of candor and good faith in dealing with the U.S. Patent and Trademark Office ("USPTO") under 37 C.F.R. § 1.56 by failing to disclose to the USPTO all information known to that individual to be material to patentability.

21.     While prosecuting the application for the '058 Patent, one or more individuals associated with the preparation, filing and prosecution of the application for the '058 Patent including, but not limited to, the alleged named inventors and the attorneys who prosecuted the application, in bad faith and intentionally, failed to disclose to the USPTO information material to the patentability of the alleged invention claimed in the '058 Patent.  The material information knowingly withheld from the USPTO includes, but is not limited to, at least U.S. Patent No. 4,978,896, filed July 26, 1989, and which issued December 18, 1990, and was assigned to General Electric Company (the "'896 Patent") (a true and correct copy of the '896 Patent is attached hereto as Exhibit B).

22.     The attorneys who prepared, filed and prosecuted the application for the '896 Patent before the USPTO include, at least, Ralph E. Krisher, Jr., a then General Electric employee (the "Patent Prosecuting Attorney").

6

23.     Mr. Krisher, Mr. Shah, and the other named inventors on the application for the '058 Patent, were all extremely familiar with and knowledgeable about the disclosure contained and claimed in the '896 Patent, at least as early as July 26, 1989 when the application for the '896 Patent was filed, and throughout the prosecution of and application for the '058 Patent.

24.     In addition, Mr. Krisher and others involved in the application for the '058 Patent learned of the issuance of the '896 Patent on or about December 18, 1990, when the '896 Patent issued.

25.     At least Mr. Krisher materially participated in the prosecution of the application for the '896 Patent between July 26, 1989 and December 18, 1990.

26.     The application for the '058 Patent was prepared and filed by Mr. Krisher and the named alleged inventors, on May 27, 1992, just seventeen months after the '896 Patent issued.

27.     Both the '896 Patent and the application for the '058 Patent name Rajendra K. Shah as an alleged inventor.

28.     Mr. Krisher and one or more of the named alleged inventors of the '058 Patent, were fully aware of at least the earlier application for the '896 Patent when they filed the application for the '058 Patent and throughout the duration of the application for the '058 Patent, and at least Mr. Krisher was fully aware of the '896 Patent when they filed the application for the '058 Patent and throughout the duration of the application for the '058 Patent – yet *none* of the individuals involved in the preparation and prosecution of the application for the '058 Patent *ever* disclosed the '896 Patent to the USPTO.

29.     Mr. Krisher and one or more of the named alleged inventors of the '058 Patent were fully aware of their duty of candor and good faith to the USPTO to disclose all information known to them to be material to patentability.  Indeed, the applicants for the '058 Patent each

signed a Combined Declaration and Power of Attorney which includes a clear and unambiguous sworn acknowledgement of their "duty to disclose information which is material to the examination of this application in accordance with Title 17, Code of Federal Regulations, § 1.56(a)."

30.     Mr. Krisher and the named alleged inventors of the '058 Patent had a duty and ample opportunity to disclose the '896 Patent to the USPTO because, before the application that matured into the '058 Patent was filed, and issued, each was extremely familiar with and knowledgeable about the disclosure contained and claimed in the '896 Patent as each had known of the application for the '896 Patent for at least approximately two years and ten months.

31.     At least Mr. Krisher had both the duty and ample opportunity to disclose the '896 Patent to the USPTO because, before the application that matured into the '058 Patent was filed, he knew of the existence and issuance of the '896 Patent for at least approximately seventeen months.

32.     On August 4, 1992, after Mr. Krisher and one or more of the alleged inventors of the '058 Patent first learned of the disclosure contained and claimed in the '896 Patent, the Patent Prosecuting Attorneys filed an Information Disclosure Statement with the USPTO concerning the application for the '058 Patent.  The August 4, 1992 Information Disclosure Statement did not disclose the '896 Patent to the USPTO.

33.     The August 4, 1992 Information Disclosure Statement did disclose U.S. Patent Number 4,648,551 to Thompson et al. and U.S. Patent Number 4,860,231 to Ballard et al., which were previously cited as prior art references in a February 12, 1990 Office Action issued by the USPTO in connection with its examination of the application for the '896 Patent.

34.     On May 22, 1995, after Mr. Krisher and one or more of the alleged inventors of

8

the '058 Patent first learned of the disclosure contained and claimed in the '896 Patent, the Patent Prosecuting Attorney filed an Information Disclosure Statement with the USPTO concerning the application for the '058 Patent. The May 22, 1995 Information Disclosure Statement did not disclose the '896 Patent to the USPTO.

35.     On August 28, 1995, after Mr. Krisher and one or more of the alleged inventors of the '058 Patent first learned of the disclosure contained and claimed in the '896 Patent, the Patent Prosecuting Attorney filed a Request for Reconsideration of Information Disclosure Statement with the USPTO concerning the application for the '058 Patent. The August 28, 1995 Request for Reconsideration of Information Disclosure Statement did not disclose the '896 Patent to the USPTO.

36.     The '896 Patent was not disclosed to the USPTO by Mr. Krisher or any of the alleged named inventors of the '058 Patent, or otherwise.

37.     The '058 Patent issued on January 7, 1997, at least approximately seven years and five months after Mr. Krisher and one or more of the alleged inventors of the '058 Patent first learned of the disclosure contained and claimed in the '896 Patent.

38.     The '058 Patent issued on January 7, 1997, at least approximately six years after at least Mr. Krisher learned of the issuance of the '896 Patent.

39.     The '896 Patent is material, as a reasonable examiner would have considered it important when deciding whether to allow the application for the '058 Patent to issue.

40.     The materiality of the '896 Patent is reflected, in part, by the fact that Rajendra K. Shah is an alleged named inventor of both the '896 Patent and the '058 Patent.

41.     The materiality of the '896 Patent is reflected, in part, by the fact that General Electric Company is the listed assignee on the face of both the '896 Patent and the '058 Patent.

9

42.     The materiality of the '896 Patent is reflected, in part, by the fact that U.S. Class/Subclass Number 318/254 is the primary class/subclass number identified on the face of both the '896 Patent and the '058 Patent.

43.     The materiality of the '896 Patent is reflected, in part, by the fact that the USPTO cited prior art references U.S. Patent Number 4,648,551 to Thompson et al. and U.S. Patent Number 4,860,231 to Ballard et al. in connection with its examination of the application for the '896 Patent and Mr. Krisher and the alleged inventors of the '058 Patent subsequently disclosed those same two prior art references to the USPTO in an Information Disclosure Statement filed by the Patent Prosecuting Attorney in connection with the application for the '058 Patent.

44.     The materiality of the '896 Patent is reflected, in part, by the fact that the '896 Patent either alone or in combination with one or more other prior art references, renders certain claims of the '058 Patent, including at least issued Claims 58, 59, and 63, invalid.

45.     The chart below, using Claim 58, provides an exemplary and non-exhaustive identification of some, but not all, portions of the '896 Patent that render such claims invalid.

| '058 Patent | '896 Patent |
|---|---|
| 58. A method for operating a system for driving a component of a heating ventilating, and/or air conditioning (HVAC) system in response to a system control signal provided by a central means, said system including a motor having a stationary assembly and a rotatable assembly in magnetic coupling relation to the stationary assembly, said rotatable assembly in driving relation to the component, said motor driving the component in response to a motor control signal; said method | "Apparatus and method for controlling a motor having a stationary assembly with a plurality of winding stages for carrying motor current and further having a rotatable assembly in driving relation with a blower in an air handling system." Abstract.<br><br>"For example, apparatus 10 may be associated with a thermostat or microprocessor which is controlling operation of the air handling system in response to sensors and operator input." Column 3, lines 55-59. |

| '058 Patent | '896 Patent |
|---|---|
| comprising the steps of: | |
| storing in a programmable memory parameters representative of the system; | "Although microprocessor 24 has been described as operating in accordance with an algorithm, one skilled in the art will readily recognize that the microprocessor may also operate in accordance with a table defining the various speed torque characteristics of the system.  It is also readily apparent to one skilled in the art that the suggested algorithm, which is a multiple slope algorithm, is still an approximation of the ideal speed torque characteristics and that a more detailed or complex algorithm or table may be used to obtain a closer approximation. The table would be generated in the following manner. A value corresponding to each preselected air flow rate and for each increment of motor speed would be calculated and stored within memory for access by the microprocessor. Depending on the size of the table and the increments, such a table could provide a nonlinear or closer approximation of the ideal speed torque characteristics for each preselected air flow rate."  Column 6, lines 25-44. |
| receiving a parameter select signal; | "In any case, apparatus 10 is adapted to receive a preselected air flow signal representing the preselected air flow rate. Preferably, this signal has a dc voltage which is directly proportional to the preselected air flow rate. In general, the signal may be variable or it may have one of several preset levels. For example, in more sophisticated air handling systems which are controlled by microprocessors, the preselected air flow signal may vary over a range of, say, zero to five volts to represent a preselected air flow rate from 400 to 1300 CFM. Alternatively, many air handling systems have two or three levels of operation corresponding to a low speed, a high speed and an override heating speed. The low speed may correspond to 400 CFM, the high speed to 800 CFM and the override heating speed to 1300 CFM. The preselected air flow signal would then take the form of one of three voltage levels corresponding to these three different preselected levels of air flow rates."  Column 3, line 59 to column 4, line 8; *see also, e.g.,* column 8, lines 28-44. |
| Selecting at least one of the parameters stored in the memory in response to the parameter select signal; and | See Preselected Air Flow Rate 11.<br><br>"A value corresponding to each preselected air flow rate and for each increment of motor speed would be calculated and stored within memory for access by the microprocessor."  Column 6, lines 37-40. |

11

| '058 Patent | '896 Patent |
|---|---|
| | "In general, apparatus 10 is associated with a device or system 11 for providing a preselected air flow rate signal representing the preselected air flow rate. For example, apparatus 10 may be associated with a thermostat or microprocessor which is controlling operation of the air handling system in response to sensors and operator input." Column 3, lines 53-59. |
| | "The preselected airflow rate signal is provided to microprocessor 10 along with a speed or rpm signal representative of the speed of motor 12." Column 4, lines 9-11. |
| | "Microprocessor 10 is responsive to both the rpm signal provided by IC 26 and the preselected air flow signal provided by the air handling system control." Column 4, lines 38-41. In response to these signals, microprocessor 24 generates a desired current signal which is a function of both the preselected flow rate signal and the rpm signal." Column 4, lines 38-44. |
| Generating control signals to control motor speed or torque as a function of the selected parameter and the system control signal. | "Microprocessor 10 is responsive to both the rpm signal provided by IC 26 and the preselected air flow signal provided by the air handling system control." Column 4, lines 38-41. In response to these signals, microprocessor 24 generates a desired current signal which is a function of both the preselected flow rate signal and the rpm signal." Column 4, lines 38-44. |
| | "In general, the desired current signal provided by microprocessor 24 comprises a pulse width modulated series of pulses having a duty cycle which is defined by an algorithm in which the duty cycle is a function of the rpm signal and the preselected air flow signal." Column 5, lines 51-55. |
| | "Although microprocessor 24 has been described as operating in accordance with an algorithm, one skilled in the art will readily recognize that the microprocessor may also operate in accordance with a table defining the various speed torque characteristics of the system." Column 6, lines 25-30. |
| | "As a result, the blower is driven by varying the motor torque according to motor speed to maintain substantially constant air flow in the system at the preselected rate substantially independent of variations in static pressure." Abstract. |

| '058 Patent | '896 Patent |
|---|---|
| | "For example, apparatus 10 may be associated with a thermostat or microprocessor which is controlling operation of the air handling system in response to sensors and operator input."  Column 3, lines 55-59. |

46.     The materiality of the '896 Patent is reflected, in part, by the fact that the '896 Patent's claims should have served as the basis of a double patenting rejection.

47.     The claims of the '058 Patent are not patentably distinct from the claims of the '896 Patent for a double patenting rejection because the '058 Patent's claims, including at least Claims 58 and 59 are either anticipated by, or would have been obvious over, the '896 Patent's claims, including at least Claims 26 and/or 27.

48.     The '896 Patent is not cumulative of other information disclosed to the USPTO in connection with the application for the '058 Patent.

49.     The '896 Patent is not cumulative, for example, because, while the USPTO apparently did not believe any issued claim of the '058 Patent to be invalidated by any reference, or combination of references, of record during the prosecution of the application for the '058 Patent, the '896 Patent either alone or in combination with one or more other prior art references, renders certain claims of the '058 Patent, including at least issued Claims 58, 59 and 63, invalid. Nordyne incorporates by reference each and every allegation set forth in Paragraphs 44-45 and 52 of this Second Amended Complaint as if fully set forth and restated herein.

50.     The '896 Patent is highly material to the alleged patentability of the claims of the '058 Patent.

51.     The conduct of at least Mr. Krisher and one or more of the alleged inventors of the '058 Patent warrants finding the entire '058 Patent is unenforceable.

52.     It would have been obvious to a person having ordinary skill in the art to modify

13

the disclosure of the '896 Patent to arrive at the alleged invention of Claims 58, 59 and 63 because, for example and without limitation: (i) the modification involves reasonable and/or simple substitution of one known element for another; and/or (ii) the modification is obvious to try and has a reasonable expectation of success.

53. The '058 Patent is unenforceable as the '896 Patent expressly discloses and teaches each and every element of one or more claims of the '058 and one or more persons involved in the prosecution of the application for the '058 knowingly, willfully, and intentionally, failed to disclose the '896 Patent to the USPTO.

54. Each and every claim of the '058 Patent is unenforceable for the failure to comply with the duty to disclose information material to patentablity under 37 C.F.R. § 1.56 and/or due to inequitable conduct on behalf of the applicants for the '058 Patent and/or their representative(s), agent(s) and/or attorney(s).

**Count IV**
**Declaratory Judgment of Unenforceability of U.S. Patent No. 5,592,058**

55. Nordyne hereby incorporates by reference each and every allegation set forth in Paragraphs 1 through 54 of this Second Amended Complaint as if fully set forth and restated herein.

56. The '058 Patent and each and every claim of the '058 Patent is unenforceable as one or more individuals associated with the filing and prosecution of the application for the '058 Patent failed to comply with his, her, and/or their duty of candor and good faith in dealing with the U.S. Patent and Trademark Office ("USPTO") under 37 C.F.R. § 1.56 by failing to disclose to the USPTO all information known to that individual to be material to patentability.

57. While prosecuting the application for the '058 Patent, one or more individuals associated with the filing and prosecution of the application for the '058 Patent including, but not

14

limited to, the alleged named inventors of the '058 Patent, in bad faith and intentionally, failed to disclose to the USPTO information material to the patentability of the alleged invention claimed in the '058 Patent. The material information knowingly withheld from the USPTO includes, but is not limited to, at least then assignee General Electric Company's prior art disclosure and offer for sale of the alleged invention claimed in the '058 Patent, namely, the next generation indoor blower ICM, also known as or referred to as ICM 2.0 and/or ECM 2.0.

58.    A true and correct copy of the document produced by RBC at RBC00008074-RBC00008090, which reflects the alleged inventors' disclosure of the alleged invention of the '058 Patent to The Trane Company on October 24, 1990, more than one year prior to the filing date of the application for the '058 Patent, is attached hereto as Exhibit C.

59.    The prior art next generation indoor blower ICM was, as illustrated at least by documents produced by RBC at RBC00008074-RBC00008090, by the sworn deposition testimony of Mr. Shah given on February 17, 2011, and/or by the sworn deposition testimony of Mr. Archer given on April 5 and 6, 2011 (Mr. Archer's deposition testimony on April 6, 2011, was as a Rule 30(b)(6) witness on behalf of RBC), fully disclosed to a third-party, The Trane Company ("Trane") at least as early as October 24, 1990.

60.    The prior art next generation indoor blower ICM that embodied the alleged invention claimed in the '058 Patent was, as illustrated by RBC document production number RBC00006868, offered for sale and sold to Carrier, disclosed in a printed publication, and/or otherwise described or disclosed to Carrier, more than one year before the filing of the application for the '058 Patent on May 27, 1992.

61.    The prior art next generation indoor blower ICM that embodied the alleged invention of the '058 Patent, as illustrated at least by the document produced by RBC at

RBC00006868, was made, used, offered for sale, and/or sold to at least Lennox, Trane, Goodman, and Carrier in January of 1991, to at least Trane, Carrier, Amana, Goodman, Lennox, York, and Waterfurnace in February of 1991, to at least Trane and Carrier in March of 1991, to at least Carrier in April of 1991, and to at least Trane and Carrier in May 1991.

62.     The prior art next generation indoor blower ICM incorporates, reflects, and/or practices the alleged invention claimed by the '058 Patent, including, but not limited to, Claims 58, 59, and 63 as illustrated at least in part by documents produced by RBC at RBC00008074-RBC00008090.

63.     The chart below provides an exemplary and non-exhaustive identification of how, at least, the document produced by RBC at RBC00008074-RBC00008090 illustrates how the prior art next generation indoor blower ICM incorporates, reflects, and/or practices at least the alleged invention claimed by Claim 58 of the '058 Patent.

| '058 Patent | The Prior Art Next Generation Indoor Blower ICM |
|---|---|
| 58. A method for operating a system for driving a component of a heating ventilating, and/or air conditioning (HVAC) system in response to a system control signal provided by a central means, said system including a motor having a stationary assembly and a rotatable assembly in magnetic coupling relation to the stationary assembly, said rotatable assembly in driving relation to the component, said motor driving the component in response to a motor control signal; said method comprising the steps of: | Redacted as required by Court Order dated May 17, 2011 (Doc. No. 86). |
| Storing in a programmable memory parameters | |

16

Case 4:09-cv-00203-ERW Doc. #: 89 Filed: 05/17/11 Page: 17 of 24 PageID #: 1519

| '058 Patent | The Prior Art Next Generation Indoor Blower ICM |
|---|---|
| representative of the system; | Redacted as required by Court Order dated May 17, 2011 (Doc. No. 86). |
| receiving a parameter select signal; | Redacted as required by Court Order dated May 17, 2011 (Doc. No. 86). |
| selecting at least one of the parameters stored in the memory in response to the parameter select signal; and | Redacted as required by Court Order dated May 17, 2011 (Doc. No. 86). |
| generating control signals to control motor speed or torque as a function of the selected parameter and the system control signal. | Redacted as required by Court Order dated May 17, 2011 (Doc. No. 86). |

| '058 Patent | The Prior Art Next Generation Indoor Blower ICM |
|---|---|
|  | Redacted as required by Court Order dated May 17, 2011 (Doc. No. 86). |

64.     The alleged inventors of the '058 Patent were fully aware of their duty of candor and good faith to the USPTO to disclose all information known to them to be material to patentability, as evidenced at least in part by the Combined Declaration and Power of Attorney executed by William R. Archer on July 16, 1992 and by Rajendra K. Shah on July 10, 1992, which includes a recitation of the "duty to disclose information which is material to the examination of this application in accordance with Title 17, Code of Federal Regulations, § 1.56(a)."

65.     Each of the alleged inventors of the '058 Patent had both the duty and ample opportunity to disclose the prior art next generation indoor blower ICM to the USPTO, as the application for the '058 Patent had not been filed when the acts, events, and disclosures referenced above occurred at least as early as October 24, 1990, and January through May of 1991 (collectively, the "Highly Material and Intentionally Withheld Prior Disclosure, Offer for Sale, and Sale").

66.     On August 4, 1992, long after the Highly Material and Intentionally Withheld Prior Disclosure, Offer for Sale, and Sale, an Information Disclosure Statement was filed with the USPTO concerning the application for the '058 Patent.  The August 4, 1992 Information Disclosure Statement did not disclose the prior art next generation indoor blower ICM nor its disclosure, offer for sale, and/or sale more than one year prior to the filing date of the application for the '058 Patent to the USPTO.

67.     On May 22, 1995, an Information Disclosure Statement was filed with the USPTO concerning the application for the '058 Patent.  The May 22, 1995 Information Disclosure Statement did not disclose the prior art next generation indoor blower ICM nor its disclosure, offer for sale, and/or sale more than one year prior to the filing date of the application for the '058 Patent, to the USPTO.

68.     On August 28, 1995, a Request for Reconsideration of Information Disclosure Statement was filed with the USPTO concerning the application for the '058 Patent.  The August 28, 1995 Request for Reconsideration of Information Disclosure Statement did not disclose the prior art next generation indoor blower ICM nor its disclosure, offer for sale, and/or sale more than one year prior to the filing date of the application for the '058 Patent to the USPTO.

69.     Neither the prior art next generation indoor blower ICM nor its disclosure, offer for sale, and/or sale more than one year prior to the filing date of the application for the '058 Patent was disclosed to the USPTO by any of the alleged inventors of the '058 Patent, any attorneys who prosecuted the application for the '058 Patent, General Electric, or anyone else associated with the application.

70.     The '058 Patent issued on January 7, 1997, approximately six years after, at least, Mr. Archer, General Electric, the other named inventors of the '058 Patent, and others associated with the application for the '058 Patent, knew of and first learned that General Electric had disclosed, offered for sale, and sold products embodying the alleged invention claimed in the '058 Patent to third-parties.

71.     A reasonable Examiner would have deemed the disclosure, offer for sale, and sale of the alleged invention of the '058 Patent to third-parties to have been material to the examination and patentability of the '058 Patent.  Indeed, even if the disclosures, offers for sale,

19

and sale, of products embodying and/or otherwise employing the alleged invention more than twelve months prior to the application filing date were, *arguendo*, somehow not ultimately considered a prior printed publication in this country, or a prior public use, offer for sale, or sale in this country, more than one year prior to the application filing date of the '058 Patent under 35 U.S.C. § 102, a reasonable Examiner still would have deemed the information to be material such that he/she could consider and evaluate whether any of that information constituted prior art or otherwise impacted the patentability of the applied-for claims.

72.     The materiality of the prior art next generation indoor blower ICM is reflected by General Electric's disclosure of the alleged invention of the '058 Patent in a printed publication in this country, and prior public use, offer for sale, and/or sale in this country, more than one year prior to the application filing date of the '058 Patent under 35 U.S.C. § 102. The next generation indoor blower ICM incorporates, reflects, and/or practices the alleged invention claimed by the '058 Patent. Nordyne incorporates by reference each and every allegation set forth in Paragraphs 62-63 of this Second Amended Complaint as if fully set forth and restated herein.

73.     On information and belief, the materiality of the prior art next generation indoor blower ICM is reflected, in part, by the fact that the General Electric Company's next generation indoor blower ICM either alone or in combination with one or more other prior art references renders certain claims of the '058 Patent invalid, including but not limited to Claims 58, 59, 63, and 73. Nordyne incorporates by reference each and every allegation set forth in Paragraphs 62-63 of this Second Amended Complaint as if fully set forth and restated herein.

74.     The prior art next generation indoor blower ICM, and its disclosure, offer for sale, use, and sale, is not cumulative of any other information disclosed to the USPTO in connection with the application for the '058 Patent.

20

75.     The disclosure, offer for sale, use, and/or sale of the prior art next generation indoor blower ICM either alone, and in combination with one or more other prior art references, renders certain claims of the '058 Patent, including at least issued Claims 58, 59, 63, and 73 invalid.  Nordyne incorporates by reference each and every allegation set forth in Paragraphs 72-73 of this Second Amended Complaint as if fully set forth and restated herein.

76.     The disclosure, offer for sale, use, and/or sale of the prior art next generation indoor blower ICM is highly material to the alleged patentability of the claims of the '058 Patent.

77.     General Electric's, the alleged inventors of the '058 Patent, and others involved in the prosecution of the application for the '058 Patent's conduct warrants holding the entire '058 Patent unenforceable.

78.     Each and every claim of the '058 Patent is unenforceable for the failure to comply with the duty to disclose information material to patentability under 37 C.F.R. § 1.56 and/or due to inequitable conduct on behalf of the applicants for the '058 Patent and/or their representative(s), agent(s) and/or attorney(s).


**WHEREFORE**, Nordyne respectfully prays that the Court enter judgment in its favor and award the following relief against RBC:

A.     Declare that Nordyne has not infringed and is not infringing any of the claims of U.S. Patent No. 5,592,058;

B.     Declare that each claim of U.S. Patent No. 5,592,058 is invalid and of no force or effect;

C.     Declare that U.S. Patent No. 5,592,058 is unenforceable;

D.     Declare that this is an exceptional case due to inequitable conduct;

E. Permanently enjoin RBC and its officers, directors, agents, servants, employees and attorneys, and any and all persons in active concert or participation with any of them, from asserting, stating, implying or suggesting that Nordyne and/or any of its respective officers, directors, agents, servants, employees, subsidiaries or customers, infringe any of the claims of U.S. Patent No. 5,592,058;

F. Award Nordyne its costs and reasonable attorneys' fees incurred in connection with this action; and

G. Award and grant Nordyne such other and further relief as the Court deems just and proper under the circumstances.


### Jury Demand

Nordyne respectfully requests a jury trial on all issues so triable.


April 6, 2011                                    Respectfully submitted,


                                    By:         /s/ Nick E. Williamson
                                            David A. Roodman, #38109MO
                                            daroodman@bryancave.com
                                            Daniel A. Crowe, #41410MO
                                            dacrowe@bryancave.com
                                            Emma C. Harty, #58188MO
                                            emma.harty@bryancave.com
                                            Nick E. Williamson, #56925MO
                                            nick.williamson@bryancave.com
                                            One Metropolitan Square
                                            211 N. Broadway, Suite 3600
                                            St. Louis, Missouri 63102
                                            Tele. (314) 259-2000
                                            Facs. (314) 259-2020

                                            *ATTORNEYS FOR PLAINTIFF*

*NORDYNE INC.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of April, 2011, the foregoing was filed electronically with the Clerk of Court to be served by operation of the court's electronic filing system upon all counsel of record.

<u>    /s/ Nick E. Williamson    </u>